Dear Chief Thomas:
You are the elected chief of police for the Town of Logansport. You advise that the governing authority of the town is considering entering into a contract with the Desoto Parish Sheriff's Office for law enforcement services. Several questions have arisen out of this circumstance. We address these questions, paraphrased, in the chronological order presented in your letter.
 1. What is the impact of the agreement upon the current budget for the police department?
The mayor and board of aldermen may decrease the funds originally budgeted to the police department according to the provisions of R.S.39:1309 and in compliance with the provisions of the Open Meetings Law, R.S. 42:4.1, et seq.
 2. How much authority will the chief of police retain? Can he retain his office space?
While the mayor and board of aldermen may decrease the police department budget as indicated in our response to your first question, note that this office concluded in Attorney General Opinion 97-484 that "the mayor and aldermen may not by budgetary decisions preempt the authority of the chief of police in favor of another law enforcement agency in the parish, and the sheriff may not limit the authority or responsibility of the chief of police to enforce town ordinances and state laws within the boundaries of the municipality". Further, in Attorney General Opinion 97-430 this office concluded as follows:
 If there is existing municipal law enforcement capable of performing adequate law enforcement for the town then the mayor and aldermen must fund it within their ability to do so. They cannot refuse to fund the chief of police in order to reserve those funds for a contract with the sheriff. If no adequate law enforcement exists in the town the mayor and aldermen have a duty to the people to do all they can within the law to provide those services, which could, conceivably, include a contract with the sheriff. The chief of police has primary responsibility for law enforcement within the municipality and that cannot be usurped by the sheriff. See Attorney General Opinions 97-484 and 97-430, copies attached.
Further, the "general responsibility for law enforcement" granted the chief of police by R.S. 33:423 means the inherent power to supervise the operation of the police department and assign its personnel and equipment. Divesting the police chief of his physical office space would usurp the "inherent powers" allocated an elected chief of police of a Lawrason Act municipality. Such an act is prohibited by law. SeeCogswell vs. Town of Logansport, 321 So.2d 774 (La.App. 2d Cir. 1975).
 3. Can the Chief of Police's salary be reduced?
The compensation of an elected public official cannot be reduced during the term for which he is elected. See LSA-Const. Art. X, Sec. 23 (1974).
 4. Can the Chief of Police's vehicle be taken away?
In Attorney General Opinion 97-430, this office determined that an elected chief of police's fringe benefits which constitute compensation cannot be discontinued during the term served. An example of a fringe benefit is an automobile provided by an employer. We remain of the opinion expressed in Opinion 97-430 that the town may not legally take away the chief of police's vehicle.
 5. Can the mayor's court be abolished?
A mayor's court may be abolished by an act of the legislature. LSA-Const. Art. 15(A) (1974) pertinently provides:
 § 15. Courts; Retention; Jurisdiction; Judicial District Changes; Terms
 Section 15. (A) Court Retention; Trial Courts of Limited Jurisdiction. The district, family, juvenile, parish, city, and magistrate courts existing on the effective date of this constitution are retained. Subject to the limitations in Sections 16 and 21 of this Article, the legislature by law may abolish or merge trail courts of limited or specialized jurisdiction. The legislature by law may establish trial courts of limited jurisdiction with parish wide territorial jurisdiction and subject matter jurisdiction which shall be uniform throughout the state. The office of city marshal is continued until the city court he serves is abolished. (Emphasis added).
 6. Which tickets may be prosecuted in Mayor's Court?
The jurisdiction of the Mayor's Court is established via authority of R.S. 33:441 which provides, pertinently:
 § 441. Mayor's court
 A. Except as provided in Chapter 7 of Title 13, there shall be a mayor's court in the municipality, with jurisdiction over all violations of municipal ordinances. The mayor may try all breaches of the ordinances and impose fines or imprisonment, or both, provided for the infraction thereof. Notwithstanding any other provision of law to the contrary, the mayor may also impose court costs not to exceed thirty dollars for each offense, as defined by ordinance, on any defendant convicted of a violation of a municipal ordinance.
The mayor holds the same position as a city court judge concerning the disposition of traffic tickets. See Attorney General Opinion 85-819. Further, R.S. 32:398.2 provides, in part:
 § 398.2. Disposition of traffic citations; unlawful acts, records
 A. Each traffic enforcement officer upon issuing a traffic citation to an alleged violator of any provision of the motor vehicle laws of this state or of any traffic ordinance of any city or town shall deposit the original citation or a copy of such traffic citation with a court having jurisdiction over the alleged offense or with the appropriate traffic violations bureau. However, a citation for a violation of R.S. 32:80(A) shall be deposited only with a court and not with a traffic violations bureau.
The mayor's court can properly receive traffic citations. The limitation to this authority is provided in R.S. 13:1894.1(B) which states:
 B. For purposes of this Section all city, parish, and municipal courts shall have concurrent jurisdiction with the district courts over violations otherwise subject to their jurisdiction provided for by R.S. 14:98, except in those cases wherein the person or defendant is charged a s a third or subsequent offender under the provisions of R.S. 14:98(D) and (E). if the charge is for a third or subsequent offense, the prosecution shall be had only in the district court and the defendant shall have the right to a trial by jury. However, mayors' courts shall have no jurisdiction whatsoever over violations as provided for by R.S. 14:98, nor to the trial of offenses against municipal ordinances relative to prosecutions on charges of driving while intoxicated. (Emphasis added).
Thus, no DWI citations may be disposed of in a mayor's court. In general, the Mayor's court jurisdiction is limited to municipal violations. No other state or parish violations are within that court's authority.
We hope the foregoing is responsive to your questions. Should you have other concerns in which we may provide assistance, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ________________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
OPINION NUMBER 97-484
DECEMBER 22, 1997
X60 Law Officers — Authority and Jurisdiction LSA-R.S. 33:404
LSA-R.S. 33:404(1) LSA-R.S. 33:404(4) and (9) LSA-R.S. 33:423
The chief of police in a Lawrason Act municipality is the chief law enforcement officer of the municipality and his authority extends to the limits of the municipality and to all offenses. His authority may not be superseded or limited by the sheriff.
Mr. Denny Vicknair Chief of Police Town of Lutcher P.O. Box 456 Lutcher, LA 70071
Dear Chief Vicknair:
You have asked for an opinion from this office regarding the right of the Mayor and Board of Alderman of the Town of Lutcher, a Lawrason Act municipality, to contract with the parish sheriff to provide law enforcement services to the Town and, in furtherance of that concept, to either cut the budget of the Chief of Police and divert those funds to the sheriff's contract or expand the budget of the Chief of Police and divert certain of those funds to the sheriff.
La.R.S. 33:404, which outlines the authority of the mayor and La.R.S.33:423, which addresses the authority of an elected chief of police, must be read together. The mayor does not have the authority, under La.R.S.33:404(1) to supervise and direct the administration and operation of a police department with an elected chief of police. He does, however, have the authority to set the budget for the department and to exercise "any other power or perform any other duty as may be necessary or proper for the administration of municipal affairs not denied by law". La.R.S.33:404(4) and (9). Therefore, the chief of police is not subject to the supervision and control of the Mayor and has control of the department budget, once set. In the case of John Doyle, Jr., Chief of Police for theCity of Harahan v. City of Harahan and the Honorable Carlo R. Ferrara,Mayor of the City of Harahan, 610 So.2d 272 (La.App. 5 Cir. 1992), the court held "that once the mayor and aldermen have budgeted and appropriated money for the police department, the authority to allocate the expenditure of these funds rests with the elected chief of police."
La.R.S. 33:423 grants the chief of police the authority to enforce all ordinances and all state laws within the municipal jurisdiction. This grant of authority carries with it certain inherent powers which are necessary for him to effectively carry out his duties. See, Cogswell v.Town of Logansport, 321 So.2d 774 (La.App. 2 Cir. 1974); Attorney General Opinion No. 86-589. There is no language in the statutes of the state that limit the authority of the chief of police as the chief law enforcement officer of the municipality, so the mayor and aldermen may not, by budgetary maneuvers, preempt the authority of the chief of police in favor of another law enforcement agency in the parish. Article 5, Section 27 of the 1974 Constitution establishes the office of sheriff and provides that the sheriff shall be "the chief law enforcement officer in the parish." This Article, read in conjunction with the Lawrason Act, makes it clear that any authority vested in municipal officials is retained by those officials and, as a result, the status of the sheriff as chief law enforcement officer of the parish is modified by the inherent powers of the chief of police of the Lawrason Act municipality. As the chief law enforcement officer of the town, the authority of the chief of police is at least equal to that of the sheriff. Consequently, the sheriff may not limit the authority or responsibility of the chief of police to enforce town ordinances and state laws within the boundaries of the municipality.
To answer the specific questions presented, the mayor does have the authority to contract with the sheriff for law enforcement services without the cooperation of the chief of police under the provisions of La.R.S. 33:404(9), cited above. This must be read in conjunction with the powers of the chief of police. If there is existing municipal law enforcement capable of performing adequate law enforcement for the town then the mayor and aldermen must fund it within their ability to do so. They cannot refuse to fund the chief of police in order to reserve those funds for a contract with the sheriff. If no adequate law enforcement exists in the town then the mayor and aldermen have a duty to the people to do all they can within the law to provide those services, which could, conceivably, include a contract with the sheriff. The chief of police has primary responsibility for law enforcement within the municipality and that cannot be usurped by the sheriff.
In answer to your second question, cutting a portion of the budget of the chief of police to fund a contract with the sheriff is similar to the situation above. However, in this case, it is clear that the town has the funds to allow the chief of police to operate so there is no legal justification for bringing the sheriff in to share in the law enforcement duties.
Finally, as to funding the chief of police but requiring that a portion of his budget be used to fund a contract with the sheriff, this would not be permissible since the mayor and aldermen have no authority to supervise or direct the operations of the chief of police. Once the budget is allocated, the chief of police controls the funds subject, however, to the requirement that the expenditure of those funds only be made pursuant to or in accordance with specific appropriation authorized by a municipal ordinance enacted by the board of aldermen.
We hope this is responsive to your request, however should you have any questions of comments please contact the undersigned at your convenience.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ___________________________ ROBERT B. BARBOR Assistant Attorney General
RPI:RBB:glb
OPINION NUMBER 97-430
FEBRUARY 9, 1998
77 Officers — Local Municipal 107 Sheriffs R.S. 33:404.1
R.S. 33:381.1
An elected Chief of Police's fringe benefits that constitute compensation cannot be discontinued during the term being served. The municipality may enter into a contract with the sheriff for law enforcement in the Town.
Ms. Constance Youngblood Mayor, Town of Colfax P.O. Box 310 Colfax, LA 71417
Dear Ms. Youngblood:
This office is in receipt of your request for an opinion of the Attorney General in regard to problems encountered with the Town's police department. You indicate because of continuing problems the Mayor and Town Council ask for an opinion as to the legality of the following course of action:
 To provide in its annual budget and/or amend its annual budget to provide for the following;
 Include funds in the budget to pay a salary for the elected chief of police only, with no fringe benefits budgeted such as an automobile, insurance, etc.; and,
 Use the other funds normally budgeted for the town police department to enter into a contract with the Sheriff of Grant Parish to provide police protection for the town.
It is well recognized that the compensation of an elected public official cannot be reduced during the term for which he is elected, Art. X, Sec.,23 La. Const., R.S. 33:404.1. Additionally, this office has concluded that the payment of hospitalization insurance premiums is "compensation" and, therefore, may not be reduced during the term for which elected, Atty. Gen. Op. Nos. 97-234, 96-380, 92-546, 91-314. Also, it is our understanding that gross income includes compensation of fringe benefits, and examples of fringe benefits are "an employer-provided automobile", 26 C.F.R. § 1.61-2T. Whether the automobile is a taxable fringe benefit or a fringe benefit excluded from income would be a factual determination under the tax law, but, any taxable fringe benefit could not be terminated during the elected official's term of office.
Except for the items considered compensation of an elected official which cannot be reduced during the term of office being served, the funds of the police department are subject to an amended budget conducted in accordance with R.S. 39:1309 and R.S. 42:4.1 et seq.
This office has recognized the inherent authority of the elected chief of police to control the police department and funds that have been budgeted and appropriated, but said funds must first be budgeted and appropriated pursuant to a municipal ordinance to fall within control of the chief of police. As observed in Atty. Gen. Op. No. 93-666, the authority to adopt and amend the budget is vested exclusively with the Mayor and Board of Aldermen. Thus, in the event a budget amendment is proposed and adopted pursuant to R.S. 39:1309-1310, the Mayor and Board of Aldermen may decrease the funds originally budgeted to the police department. This budget amendment would entail public hearings in an open meetings before such a cut could be made.
However, in Atty. Gen. Op. No. 97-484 it was concluded the mayor and aldermen may not by budgetary decisions preempt the authority of the chief of police in favor of another law enforcement agency in the parish, and the sheriff may not limit the authority or responsibility of the chief of police to enforce town ordinances and state laws within the boundaries of the municipality. This office concluded as follows:
 If there is existing municipal law enforcement capable of performing adequate law enforcement for the town then the mayor and aldermen must fund it within their ability to do so. They cannot refuse to fund the chief of police in order to reserve those funds for a contract with the sheriff. If no adequate law enforcement exists in the town the mayor and aldermen have a duty to the people to do all they can within the law to provide those services, which could, conceivably, include a contract with the sheriff. The chief of police has primary responsibility for law enforcement within the municipality and that cannot be usurped by the sheriff.
You state there have been continuing problems with the police department, and this office recognized in Atty. Gen. Op. No. 90-211 that a town may enter into a contract for a sheriff to perform law enforcement within the town. It was pointed out inasmuch as the Town of Plain Dealing operated under a special charter calling for the elected position of marshal, it would be necessary to amend the charter to eliminate the position of marshal.
In connection with the obligation of the mayor and aldermen to the people to do all they can within the law to provide adequate law enforcement, we find it pertinent to point out that R.S. 33:381.1 sets forth the procedure to authorize the mayor to appoint a marshal or chief of police with approval of the board of aldermen in lieu of an elected chief of police, and provides as follows:
 The marshal who is the chief of police in such municipalities shall be elected at large, provided that, notwithstanding any other provisions of law to the contrary, a majority of the qualified electors voting therein may, at a special election called by the board of aldermen for that purpose, authorize the mayor to thereafter appoint a marshal with the approval of the board of aldermen. Such an election shall be called only upon the presentation of a petition, directed to the board of aldermen and signed by at least twenty-five percent of the qualified electors of the municipality. Once such an election has been called and held, no further or other election on the same question shall be held for at least four years.
 If the people of any municipality vote to authorize the mayor to appoint the marshal, the first such appointment shall be made at the end of the term of the marshal in office at the time the election was held unless at that time the office of marshal is vacant or the incumbent is an appointed official.
 Upon the expiration of at least four years after the effective date of any such determination that the marshal shall be an appointed rather than an elected official the people of any such municipality may determine that said official shall be elective, but only in the same manner and through the same petition and election procedure as hereinabove set forth.
Therefore, a municipality may enter into an intergovernmental agreement for a sheriff to perform law enforcement services within the municipality with an elected chief of police without the cooperation of the chief of police, but both the mayor and the board of aldermen would have to concur in the contract with the mayor signing the same on behalf of the municipality. Atty. Gen. Op. No. 93-283. Moreover, if the town has the funds to allow the chief of police to operate, this office has stated there is no legal justification for bringing the sheriff in to share in the law enforcement duties. However, if the funds are limited and the chief of police is not capable of sufficient law enforcement, we feel the mayor and board of aldermen have the duty to seek sufficient law enforcement, and if necessary may have to make budgetary amendments. If such steps are necessary is a question of fact that we cannot answer.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: ___________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR
Date Received: Date Released:
OPINION NUMBER 85-819
February 7, 1986
MUNICIPALITIES 71
R.S. 33:401
Mayor has authority: to fix compensation of all municipal officers, including approval of supplemental pay: to receive and enforce municipal traffic citations; to release information from municipal public records.
Mr. Louis Cooper Chief of Police Rt. 1, Box 27 Merryville, Louisiana 70653
Dear Mr. Cooper:
Your request for an opinion by the Attorney General's Office has been forwarded to me for disposition. You have posed five (5) questions which I shall address in the sequence in which they appear in your letter:
(1) Does the mayor have the option of not signing for supplemental pay for city policemen when they are eligible and are due it?
LSA R.S. 33:401 states in pertinent part:
 A. The mayor and board of aldermen of every municipality shall have the care, management and control of the municipality and its property and finances. They shall have power:
 (30) To provide for municipal officers other than those required by this part who may be found necessary; to prescribe the duties and fix the compensation of all officers and employees, subject to any applicable civil service law;. . . .
This statute suggests that the mayor is empowered and, in fact, required to manage and administer municipal funds. It follows then that the mayor could refuse to authorize the expenditure of municipal funds, and he could "fix the compensation" of a police officer to the extent that compensation is taken from municipal monies. This authority to fix compensation for police officers is extended relative to supplemental pay through provisions of LSA-R.S. 33:2218.1 et seq.
 R.S. 33:2218.4 states in part:
 A. The funds appropriated and dedicated as herein provided shall be disbursed upon warrants drawn by the mayors of the respective municipalities . . . which warrants shall have attached to them a detailed list of names of officers for whose benefit any particular warrant is drawn, . . .
 B. . . . on the basis of such warrants, the Director of the State Department of Public Safety shall prepare and sign individual checks representing the amount to be paid out of state funds to each police officer . . .
Department of Public Safety policy requires that no warrant for supplemental pay shall be honored unless it has been signed by the certifying officer — the mayor, and the approving officer — the chief of police. These signatures must also appear on the notarized eligibility application completed for each candidate for supplemental pay.
As you are probably aware, the supplemental pay plan statutes provide for creation of a board of review to handle questions arising from the plan's implementation. The settlement of eligibility disputes is outlined in LSA-R.S. 2218.7:
 B. Whenever any questions arises as to the eligibility of any person to receive additional pay out of state funds . . . the question shall be submitted to the board of review herein created for determination, and the decision of the board with regard to eligibility shall be final.
The Louisiana Court of Appeal added in Anderson v. State, 363 So.2d 728
(La.App. 1978) that the above cited statute's provision, that the board of review's decision regarding eligibility shall be final, does not preclude judicial review of the board's decision.
The current members of the Board of Review are: James L. Thibodeaux, representing the Louisiana Department of Public Safety, Sid Gauthreaux, a representative of the Louisiana Association of Chiefs of Police, and Noel Hunt of the Division of Administration. Should an officer wish to communicate directly with the board for information or to request a hearing he may write to:
 James L. Thibodeaux Finance Division Department of Public Safety P.O. Box 66614 Baton Rouge, Louisiana 70896
(2) When a town does not have a prosecuting attorney, traffic bureau, or a town judge, does the chief of police have to turn traffic tickets in to the mayor "s office before the mayor's court is convened?
LSA R.S. 33:441.1 establishes the municipal Mayor's Court by statute. It vests that court with "jurisdiction over all violations of municipal ordinances. The mayor may try all breaches of the ordinances and impose fines or imprisonment, or both, provided for the infraction thereof." Mayor's courts are courts which have jurisdiction to conduct trials, to determine guilt and impose sentences including fines and imprisonment for breach of municipal ordinances. State v. Foy, 401 So.2d 948 (1981). Since the mayor may constitutionally sit as judge of a mayor's court (Attorney General's Opinion, April 5, 1973), he holds the same position as a city judge relative to the receipt of traffic tickets and other municipal citations.
More specifically LSA-R.S. 32:398.2 provides the manner for disposition of traffic citations. It states in part:
 A. Each traffic enforcement officer upon issuing a traffic citation to an alleged violator of any provision of the motor vehicle laws of this state or of any traffic ordinance of any city or town shall deposit the original citation or a copy of such traffic citation with a court having jurisdiction over the alleged offense or with the appropriate traffic violations bureau. However, a citation for a violation of R.S. 32:80 (A) shall be deposited only with a court and not with a traffic violations bureau.
 B. Upon the deposit of the original citation or a copy of the traffic citation with a court having jurisdiction over the alleged offense or with the traffic violations bureau as set forth herein, the original citation or copy of such traffic citation shall be disposed of only by trial in the court of proper jurisdiction or any other official action by a judge of the court, including forfeiture of the bail, or by the deposit of sufficient bail with the traffic violations bureau or payment of a fine to said bureau by the person to whom such traffic citation has been issued. However, a citation or its copy alleging a violation of R.S. 32:80 (A) shall be disposed of only by trial or acceptance of a plea in open court.
 C. It shall be unlawful for any traffic enforcement officer or any other public employee to dispose of a traffic citation or copies thereof or of the record of the issuance of the citation in a manner other than as required herein.
The procedure outlined in R.S. 32:398.2 clearly indicates that the mayor's court, having appropriate jurisdiction, is the proper depository for local traffic citations. In my opinion, the only possible exceptions to this interpretation would be those violations provided for by R.S. 14:98
or relating to prosecutions on charges of driving while intoxicated per the directive of R.S. 13:1894.1 discussed below at question 5.
(3) In a town that operates under the Lawrason Act, is the Chief of Police, who is elected, or the Mayor the administrator of the Police Department?
R.S. 33:401 (See above) establishes the role of the mayor as "manager" of the municipality, its property, and finances. The statute adds that the mayor and board of alderman shall have power "(31) To provide for the removal of officers and discharge of employees for misconduct or neglect of duty, subject to any applicable civil service law."
Under the aldermanic form of government, the specific duties of the chief of police are defined neither by statute nor jurisprudence. Nevertheless, the Louisiana Supreme Court undertook to define more fully the powers and duties of the chief of police in the aldermanic context. In Lentini vs. City of Kenner, 211 So.2d 311 (1968), the court struck down a city ordinance which purported to divest the chief of police of his power to control the property of the police department and to make personnel assignments. The court had occasion to state that the chief of police ". . . is the chief law enforcement officer of the city, and, as such, has supervision of the police department."
(4) Does the mayor violate the privacy act when he brings traffic tickets into a public meeting of the city council and publicly calls names of a traffic offender?
LSA R.S. 44:3 provides in pertinent part:
 (4) . . . the records of the booking of a person as provided in Louisiana Code of Criminal Procedure Article 228, records of the issuance of a summons or citation, and records of the filing of a bill of information shall be public record.
 * * *
 D. Nothing in this section shall be construed to prevent any and all prosecutive, investigative and law enforcement agencies from having among themselves a free flow of information for the purpose of achieving coordinated and effective criminal justice.
Inasmuch as public records must be made available to any citizen, I know of no privacy act which would be applicable to the situation you describe.
(5) Does the chief of police have the option of carrying traffic tickets to district court?
As I noted above, the mayor's court has jurisdiction over all violations of municipal ordinances. It is well settled that the mayor, acting as presiding magistrate, has the province to decide jurisdictional questions. Attorney General's Opinion 74-1687 elaborates: "If there is error in the mayor's court, an appeal de novo to the district court is the proper remedy." See also State vs. Stanley, 22 So.2d 657 (1945).
There is an exception worthy of note. LSA-R.S. 13:1894.1 states in part:
 . . . mayor's courts shall have no jurisdiction whatsoever over violations as provided for by R.S. 14:98, nor the trial of offenses against municipal ordinances relative to prosecutions on charges of driving while intoxicated.
It is my opinion that only those traffic violations which fit the exception of R.S. 13:1894.1 would be appropriately taken directly to district court.
I hope that this material will be helpful to you. If this office can be of further assistance on this or any other matter, please feel free to contact us again.
Sincerely,
 WILLIAM J. GUSTED JR. Attorney General
 BY: __________________________ RENE SALOMON Assistant Attorney General
RS/ns/fd